DECISION
Relator, First Energy Corp., has filed an original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Barbara Stover ("claimant") and to either deny claimant's application for PTD compensation or issue an order granting or denying the requested compensation which complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On March 22, 2002, the magistrate issued a decision, which included findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed one objection to the magistrate's decision.
Relator argues in its objection that the magistrate should have found the commission abused its discretion because it failed to analyze or discuss the effect of claimant's age. We note that a review of the brief submitted by relator to the magistrate shows that this argument has already been presented. In response to relator's argument, the magistrate found that claimant's "age was not a dispositive factor as the commission concluded she was not amenable to rehabilitation and her other vocational factors were negative." We agree with the magistrate's conclusion that the commission "adequately address[ed] the nonmedical vocational factors, and relator has not demonstrated that the commission abused its discretion in this regard."
After an examination of the magistrate's decision, an independent review of the stipulated evidence, and due consideration of relator's objection, this court overrules relator's objection and adopts the findings of fact and conclusions of law contained in the magistrate's decision. Since the magistrate sufficiently discussed and determined the issues raised by relator in its objection, further discussion is not warranted. Accordingly, relator's request for a writ of mandamus is denied.
Objection overruled; writ denied.
LAZARUS and PETREE, JJ., concur.
 IN MANDAMUS
Relator, First Energy Corp., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Barbara Stover ("claimant") and ordering the commission to either deny relator's application for PTD compensation or issue an order granting or denying the requested compensation in an order which complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Findings of Fact:
1. Claimant sustained a work-related injury on February 8, 1982, and her claim has been allowed for: "Sprain low back; compression of L5 motor root; particularly on the left side; failed back syndrome; two level degenerative disc disease status post laminectomy and discectomy." In July 1982, claimant underwent a lumbar-laminectomy at L4-5.
2. Following her back surgery, claimant returned to work and was placed in a light duty capacity.
3. Claimant suffered an exacerbation of her injury in 1983, and her treating physician placed her off work.
4. In 1985, claimant underwent a micro-lumbar decompression surgery. It was after this surgery failed to alleviate her pain that claimant's claim was additionally allowed for "failed back syndrome" and "two-level degenerative disc disease status post laminectomy and discectomy."
5. Claimant returned to work; however, she sustained another exacerbation of her lower back injury in 1992. Claimant received a period of temporary total disability compensation.
6. In 1992, claimant was terminated from her employment due to excessive absenteeism.
7. Following her termination, claimant applied for security positions at other companies but was not offered a job.
8. On November 7, 2000, claimant filed an application for PTD compensation supported by the October 9, 2000 report of Dr. William R. Bauer, who opined as follows:
 As a result of the patients injury to the nerve roots she has chronic pain that is disabling in and of itself, along with the numbness, weakness, and muscle pain that renders her permanently and totally disabled. She is such because of the nature of the injuries, their effect upon her nervous system, and with the pain there is not a job that she could do even sedentary that could be performed, because of the effect upon her nervous system, both peripheral and central.
9. Claimant was also examined by doctor S.S. Purewal, M.D., who issued a report dated November 29, 2000, and opined as follows:
 * * * Based on the above evaluation of this patient and taking into account the allowed conditions under this claim, it is my opinion that this patient is not permanently and totally disabled. It is true that she is not able to return to her former position of employment as a security guard if that job involved extended periods of standing and walking. On the other hand, she is able to engage in sustained remunerative employment in a sedentary or light category. She would be able to perform a job which requires up to 10 pounds of lifting continuously and 20 pounds of lifting occasionally. She would not be able to perform a job that would require extended periods of sitting or standing in one position, but a job where she can move about periodically would be suitable for her physical capabilities.
10. Claimant submitted a vocational capacity evaluation prepared by Barbara Gearhart, M.Ed., CRC, LPC, and Teresa J. Kahler, Ph.D., dated March 2, 2001. Several vocational tests were administered to claimant and ultimately Gearhart and Kahler concluded as follows:
 Mrs. Stover does not appear to have any transferable skills from past work. Furthermore, any jobs requiring reading or report writing would likely be very difficult for her based on today's assessment. Please see Vocational Assessment portion of this report for details. The fact that she passed the GED and went on to complete the Police Academy is rather remarkable given her performance on a test of basic skills and a test of overall ability. She did say that she "walked the floors" many nights in preparation for examinations and barely passed both the GED and the Police Academy. As tested by the WRAT, her reading level is below sixth grade, at which most newspapers and other frequently read publications are written. Overall, aptitude information obtained from today's tests is inconsistent with Mr. Finnegan's summary of Mrs. Stover's vocational potential. It does not appear that Mr. Finnegan actually tested Mrs. Stover's skills, but rather he surmised, based on past work history, that she possessed average aptitudes. This is not the case when looking at her overall below average scores on today's tests. On her guard job she says that any report writing of logs were of a checklist nature and the words became familiar to her so she knew how to accurately complete her logs. It is doubtful that she would have the intellectual capacity to complete a training program such as work processing because this would require a much higher level of academic ability than Mrs. Stover appears to possess. This is also not to mention the fact that she would likely be unable to sustain a seated position at a computer or desk for any length of time during a normal work day without experiencing increased back discomfort that would ultimately render her a poor producer. Based on today's assessment alone she does not appear to have the physical capacity to sit at a table for any length of time without discomfort, nor does she have the dexterities necessary to work productively with her hands.
 This is a woman with various work experience, but an inability to work at any of these past jobs due to severe low back and leg pain. Two surgeries and a variety of therapies over the last nearly 20 years has brought about little improvement. She does not appear to be a good candidate for job retraining due to her low basic skill level and her limited physical capacity. She has been deemed too disabled for work by the Social Security Administration who has granted her SSDI. Overall, Mrs. Stover is a very poor candidate for return to work.
11. Relator submitted a vocational report prepared by John Finnegan, M.Ed., CRC, CCM, and dated February 16, 2001. Mr. Finnegan concluded that relator's age of fifty-three years would not effect her ability to meet basic demands of entry level jobs, and that her ability to obtain her GED and to complete basic police academy training were positive factors affecting her ability to meet the basic demands of employment. Although Mr. Finnegan indicated that claimant noted on her PTD application that she cannot read, write or perform basic math, she completed her GED and additional police academy training and, as such, Mr. Finnegan concluded that there was no evidence in the file to indicate the presence of a learning disability. He concluded that her background demonstrated the ability to develop academic and other skills required to perform entry level sedentary to light duty jobs. Mr. Finnegan listed several jobs which relator could perform including returning to her past work as a security guard.
12. An employability assessment was prepared by Janice Grun, M.Ed., CRC, CDMS, and dated February 22, 2001. Based upon the report of Dr. Bauer, Ms. Grun concluded that there were no employment options available to claimant. However, based upon the medical report of Dr. Purewal, Ms. Grun concluded that relator could immediately perform the following jobs: "Security guard, waitress, title clerk, employment interviewer, contact representative, examiner."
13. Claimant's application was heard before a staff hearing officer ("SHO") on April 16, 2001, and resulted in an order granting the requested compensation. The SHO relied upon the medical report of Dr. Purewal for the conclusion that claimant is able to engage in sustained remunerative employment in the sedentary or light category. The SHO also relied upon the vocational capacity evaluation prepared by Gearhart and Kahler for the conclusion that claimant does not have any transferable skills from her past work; that any jobs requiring reading or report writing would likely be very difficult for her; the fact that claimant's ability to pass the GED and complete the police academy training was remarkable given her actual abilities; that she had unsuccessfully attempted to retrain twice; that claimant does not possess average aptitude; and that claimant does not appear to be a good candidate for job retraining due to her low level basic skill level and limited physical capacity. As such, the commission granted claimant's application for PTD compensation.
14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. Stephenson, supra. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. Noll, supra.
In this mandamus action, relator contends that the commission failed to adequately explain how claimant's age, work experience and education preclude her from engaging in sustained remunerative employment. Relator also contends that the commission failed to address claimant's ability to be retrained in light of her age, work experience and education. For the reasons that follow, this magistrate disagrees.
The commission relied upon the report of Dr. Purewal for the conclusion that claimant was capable of performing some sustained remunerative employment in the sedentary to light duty range. The commission also relied upon the vocational report prepared by Gearhart and Kahler. As part of that report, several vocational tests were administered to claimant and the results were explained in the report. It was noted, both in the vocational report and by the commission, that claimant's ability to complete her GED and complete training at the police academy was not indicative of her abilities. Both through the report of Gearhart and Kahler, and through its own order, the commission explained the rationale for its finding that claimant's level of achievement was above her actual day-to-day abilities to perform. Further, through the report of Gearhart and Kahler, and in its own order, the commission explained, that, given her difficulties in reading, writing and performing math, claimant was not a good candidate for retraining. Where a vocational report extensively discusses and analyzes the relevant nonmedical factors, the commission does not to repeat the analysis in its order. State ex rel. Hunt v. Indus. Comm. (Sept. 28, 1995), Franklin App. No. 94APD11-1659, unreported (Memorandum Decision), and State ex rel. Freeman v. Indus. Comm. (Mar. 17, 1998), Franklin App. No. 97APD02-251, unreported (Memorandum Decision).
Relator specifically contends that the commission failed to discuss relator's age in conjunction with the amount of time she had to rehabilitate or retrain. Relator contends that State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148, requires this court to order the commission to hold relator accountable for her failure to retrain. This magistrate disagrees.
Considering this case on its facts, the commission found claimant's education and work history to be negatable factors. The commission also found that claimant is not a good candidate for job retraining. Relator's age was not a dispositive factor as the commission concluded she was not amenable to rehabilitation and her other vocational factors were negative.
As stated previously, the commission accepted and adopted the vocational report prepared by Gearhart and Kahler. Within the body of that report, Gearhart and Kahler explained their findings with regard to claimant's performance on testing, her inability to read, write and perform basic math, her lack of transferable skills, and her likelihood for not satisfactorily being able to be retrained or otherwise rehabilitated. Based upon the commission's reliance on this report and the commission's own explanation, this magistrate finds that the commission did adequately address the nonmedical vocational factors, and relator has not demonstrated that the commission abused its discretion in this regard.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in granting claimant's application for PTD compensation, and relator's request for a writ of mandamus should be denied.